UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YENLY T. ROSS,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>   Defendant. | Case No. ED CV 13-515-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

  On March 27, 2013, plaintiff Yenly T. Ross filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

  Plaintiff presents two disputed issues for decision: (1) whether the

1

administrative law judge ("ALJ") erred at step two, and consequently in his residual functional capacity ("RFC") determination; and (2) whether the ALJ provided clear and convincing reasons for discounting plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-11; Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-10.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred at step two. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 38 years old on her alleged disability onset date, has two years of college education. AR at 117, 126. Plaintiff has past relevant work as an order clerk and stock clerk. *Id.* at 73.

On November 17, 2009, plaintiff filed an application for a period of disability and DIB, alleging an onset date of November 3, 2009 due to lower back pain, left knee replacement, right knee pain, carpal tunnel, and depression. *Id.* at 10, 117, 121, 172, 183. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 79-83, 89-93, 96.

On July 12, 2011, plaintiff, represented by counsel, appeared and testified at an administrative hearing before the ALJ. *Id.* at 58-76. Kelly Winn-Boaitey, a vocational expert, also provided testimony. *Id*. at 73-75. On August 22, 2011, the ALJ denied plaintiff's claim for benefits. *Id.* at 10-18.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity

since November 3, 2009, the alleged onset date. *Id.* at 12.

At step two, the ALJ found that the plaintiff suffered from the following severe impairments: status post partial left knee replacement and back pain. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 14.

The ALJ then assessed plaintiff's RFC,[1] and determined that she had the RFC to: lift/carry ten pounds occasionally and frequently; stand/walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; and occasionally balance, stoop, or kneel. *Id.* The ALJ precluded plaintiff from working at unprotected heights, crouching, crawling, or climbing ladders, ropes, or scaffolds. *Id.*

The ALJ found, at step four, that plaintiff was able to perform her past relevant work as an order clerk. *Id.* at 17. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

The ALJ's decision stands as the final decision of the Commissioner.

### III.

### **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Erred at Step Two and Made an Improper RFC Determination

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence. P. Mem. at 4-7. Despite her characterization, plaintiff actually makes two arguments. First, plaintiff argues that the ALJ erred at step

two by failing to find that her right knee impairment and obesity were severe. *Id.* at 5. Second, plaintiff argues that the ALJ consequently failed to consider substantial evidence of those impairments in his RFC determination. *Id*. at 5-7. The court agrees.

### 1. The ALJ Erred at Step Two

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520 (a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify "at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). An impairment is "not severe" when the impairment would have no more than a minimal effect on a claimant's ability to work. *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) ("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'"); Social Security Ruling ("SSR") 85-28.[2] "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687. In addition, "'if an adjudicator is unable to determine clearly the effect of an

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

5

impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Id.* (quoting SSR 85-28) (brackets omitted).

First, with regard to plaintiff's right knee impairment, the ALJ did not specifically discuss why he concluded that plaintiff did not have a severe right knee impairment. In his decision, he noted that an April 2010 x-ray showed degenerative changes involving the medial joint compartment knee and mild to moderate compartment arthrosis. AR at 12, 16. He also noted that the treating physician, Dr. Shahram Solhpour, recommended physical therapy, not surgery, for the right knee. *Id*. at 16. Assuming these were the ALJ's reasons for finding plaintiff's right knee impairment not severe, the ALJ erred.

The objective evidence clearly showed that plaintiff had a right knee impairment that had more than a minimal effect on her ability to work. X-rays and a bone scan reflect a right knee impairment that increased in severity over time. In January 2010, plaintiff had a loss of space of 50 percent. *Id*. at 316. In April 2010, an x-ray reflected mild to moderate arthrosis. *Id*. at 398. By February 2011, arthroscopic pictures showed that plaintiff had near complete cartilage loss.[3] *Id*. at 366. Throughout this period, plaintiff continuously complained about pain and sought treatment for her right knee pain. *See, e.g., id.* at 316, 366, 398.

The fact that Dr. Solhpour recommended physical therapy rather than surgery also does not support the ALJ's non-severity finding.[4] Regardless of the

---

[3]   Defendant asserts that plaintiff relies on evidence submitted to the Appeals Council in her request to review the ALJ's decision, but defendant fails to specify what new evidence plaintiff refers to. D. Mem. at 3 (referring to P. Mem. at 5). All the evidence cited on page five of plaintiff's memorandum was in an exhibit continuously referenced by the ALJ in his decision.

[4]   Because plaintiff had arthroscopic surgery in February 2011 and the ALJ referred to the exhibit discussing the arthroscopy, the court assumes that the ALJ

6

treatment recommended, the objective evidence clearly established a right knee impairment. Such impairment need not require surgery to be considered severe under the step two analysis. Moreover, the ALJ misinterpreted both Dr. Solhpour's treatment plan and recommendation. Dr. Solhpour did not solely treat plaintiff with physical therapy. He also treated plaintiff with pain medication, arthroscopy, and injections. *See id.* at 365-67, 426. More important, Dr. Solhpour did not recommended conservative treatment because plaintiff's impairment was mild. To the contrary, Dr. Solhpour stated that plaintiff "need[ed] to have a total knee replacement," but due to multiple factors, including her obesity, age, and moderate results from the left knee replacement surgery, he would advise delaying the surgery until later. *Id*. at 366-67.

Second, the ALJ also erred in failing to find that plaintiff's obesity was a severe impairment. Although obesity is not a listed impairment, the ALJ must consider the effect of obesity on a claimant's other impairments, ability to work and general health even when a claimant does not raise the issue. *See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria,* 64 F.R. 46122 (effective October 25, 1999) (delisting 9.09, "Obesity," from the Listings)*; Celaya v. Halter*, 332 F.3d 1177, 1181-82 (9th Cir. 2003); *see also* Social Security Ruling 02-1p (requiring an ALJ to consider the effects of obesity at several points in the five-step sequential evaluation). An ALJ must "evaluate each case based on the information in the case record" as obesity may or may not increase the severity of the impairments. SSR 02-1p. When the record does not indicate that obesity exacerbated other impairments, the claimant is represented by counsel, and the claimant produces no evidence to establish equivalence to a listed impairment, then it is not reversible error for the ALJ to not analyze obesity at each step. *Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir.

---

meant knee replacement surgery when discussing "surgery".

2005).

Here, it is clear that obesity had an effect on plaintiff's other impairments. Just prior to the hearing, plaintiff, who is 5'6", weighed 252 pounds and had a body mass index ("BMI") of 40.7.[5] AR at 424. Dr. Solhpour noted that plaintiff's weight limited her treatment options. *Id.* at 451. Dr. Solhpour specifically listed plaintiff's weight as one of the reasons he advised against surgery. *Id.* at 366-67. Despite multiple references to plaintiff's obesity by her treating physician, the ALJ failed to mention plaintiff's weight and BMI in his decision.[6]

In sum, the ALJ erred at step two. There was substantial evidence to support a finding that plaintiff's right knee impairment and obesity were sufficient to pass the de minimis threshold at step two. Nonetheless, given that the ALJ found plaintiff suffered from two other severe impairments, the ALJ's step two error was harmless in and of itself. *See Burch*, 400 F.3d at 682 (any error the ALJ committed at step two was harmless because the step was resolved in claimant's favor). The harm came, however, when the ALJ also failed to properly consider these impairments in assessing plaintiff's RFC.

**2. The ALJ Erred in His RFC Assessment**

Plaintiff alleges that the ALJ failed to consider evidence of her right knee impairment and obesity in his RFC determination. P. Mem. at 5-7. The ALJ was obligated to consider these impairments in assessing plaintiff's RFC,

---

[5] According to the Centers for Disease Control and Prevention, "[a]n adult who has a BMI of 30 or higher is considered obese." *See* http://www.cdc.gov/obesity/adult/defining.html.

[6] Defendant argues that both State Agency physicians, whose opinions were given moderate weight, considered plaintiff's obesity in rendering their opinions. D. Mem. at 6. As discussed *infra*, neither opinion constitutes substantial evidence. Regardless, defendant is incorrect. Neither State Agency physician referenced plaintiff's obesity. *See* AR at 293-99, 357-62.

8

notwithstanding the ALJ's failure to find them to be severe impairments. *See* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

The ALJ determined that plaintiff had the RFC to, inter alia, lift/carry ten pounds frequently and occasionally, stand/walk two hours in an eight-hour day, and sit six hours in an eight-hour workday. AR at 14. In reaching his RFC determination, the ALJ gave moderate weight to the opinions of State Agency physicians Dr. G. Taylor-Holmes and Dr. C. Scott. *Id.* at 16-17. The ALJ also considered plaintiff's medical record. *Id.* at 17.

Here, plaintiff's treating physician, Dr. Solhpour, did not provide an opinion as to plaintiff's physical limitations. Dr. Aaron R. Allen, plaintiff's treating physician in her worker's compensation case, also provided his treatment notes but no opinion. *See, e.g.,* AR at 282-85. The ALJ also did not retain a consultative examiner. As such, the only opinions were those of non-examining physicians, and the opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n. 7 (9th Cir. 1993). The opinions of non-examining physicians may only "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Dr. Taylor-Holmes issued his opinion on December 24, 2009. AR at 293-99. Dr. Taylor-Holmes opined that plaintiff could lift/carry ten pounds, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. *Id.* at 294. Dr. Taylor-Holmes only reviewed plaintiff's 2008 and 2009 medical records, before her right knee impairment increased in severity. *See id.* at

298-99.  Plaintiff first started complaining of right knee pain in late 2009.  *See id.* at 274.  A January 2010 x-ray showed that plaintiff had a complete loss of joint space in her left knee and a loss of 50% space in her right knee.  *Id*. at 316.  By January 2011, plaintiff's right knee was nearly medially bone on bone in her right knee.  *Id*. at 371.  Because Dr. Taylor-Holmes did not review plaintiff's entire medical record, in particular the x-rays and scans of her right knee, his opinion was inconsistent with the evidence and cannot constitute substantial evidence.

Dr. C. Scott issued his opinion on August 2, 2010.  *Id.* at 357-62.  Dr. Scott opined the same limitations as Dr. Taylor-Holmes except that he further limited plaintiff to standing/walking no more than thirty minutes at a time and occasional bilateral pushing/pulling in the lower extremities.  *Id.* at 358.  Unlike Dr. Taylor-Holmes, Dr. Scott reviewed at least one x-ray of plaintiff's right knee, the January 2010 x-ray, and specifically referenced it to support his exertional limitations.  *See id.* at 358-59.  Although the ALJ gave Dr. Scott's opinion moderate weight, he appears to have actually rejected it as he did not adopt the more severe limitations.  Nevertheless, Dr. Scott's opinion likewise cannot constitute substantial evidence because it was provided without the benefit of all the medical evidence.

Accordingly, because the opinions of the State Agency physicians do not constitute substantial evidence and the objective medical evidence does not support the ALJ's findings regarding plaintiff's right knee and obesity, the ALJ's RFC determination was in error.

**B.    The ALJ Improperly Discounted Plaintiff's Credibility**

Plaintiff contends that the ALJ improperly discounted her credibility.  P. Mem. at 7-11.  Specifically, plaintiff contends that the reasons the ALJ provided were legally insufficient.  *Id.*  The court agrees in part.

The ALJ must make specific credibility findings, supported by the record.  SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the

ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 15. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because: (1) there was no evidence that plaintiff's wheelchair use was a medical necessity; (2) the objective evidence did not support her limitations; (3) plaintiff's daily activities were inconsistent with disabling levels of pain; and (4) plaintiff's medications were not strong. *Id.* at 15-16.

**1.    <u>Wheelchair</u>**

The ALJ's first ground for an adverse credibility finding, that there was no evidence that plaintiff's wheelchair use was a medical necessity, was a clear and convincing reason. *Id.* at 15. On July 12, 2011, plaintiff testified that a physician prescribed her a wheelchair and she only used the wheelchair when she knew that

she had to do a lot of standing or walking. *Id*. at 69, 72. The ALJ correctly noted that the record contains no reference to such prescription. Nevertheless, because this case is being remanded and plaintiff testified that she only used the wheelchair occasionally, not regularly, the ALJ should conduct further inquiry to determine whether plaintiff's treating physician indeed recommended the occasional use of a wheelchair or other assistive devices.

### 2. Lack of Objective Medical Evidence

The ALJ's second ground for discounting plaintiff's credibility – lack of objective medical evidence – was not clear and convincing. An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but it may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Here, the ALJ correctly noted that in January 2011, five months after plaintiff's left knee surgery, Dr. Solhpour observed that plaintiff's range of motion, strength, and stability were all "grossly normal." AR at 15. With regard to plaintiff's right knee, the ALJ found that plaintiff's 2010 x-rays revealed only mild degenerative changes and Dr. Solhpour only recommended physical therapy.[7] *Id.* at 16.

First, with regard to plaintiff's left knee, the ALJ correctly noted that on January 19, 2011, Dr. Solhpour observed that plaintiff's flexion was essentially normal, her extension improved greatly and may eventually achieve the full extension, and the range of motion, strength, and stability in her knee were grossly normal. *Id.* at 371-72. Moreover, plaintiff herself relayed that the only thing that

---

[7] Although the ALJ also discounted plaintiff's complaints regarding her back and mental impairment, plaintiff appears to only focus on plaintiff's knee impairments. *See* AR at 15-16; P. Mem. at 7-11.

really bothered her about her left knee was trying to get to full extension. *Id.* at 372. But on that same day, plaintiff also claimed that the knee surgery only provided moderate relief. *Id.* at 370. A few months later, in April 2011, plaintiff continued to experience difficultly straightening her left knee. *Id.* at 487. And in July 2011, Dr. Solhpour commented that plaintiff's left knee surgery did not "seem to be very beneficial." *Id.* at 425. Thus, although there was some improvement, the evidence does not support the ALJ's implication that plaintiff no longer suffered from pain in her left knee.

As for plaintiff's right knee, x-rays, a bond scan, and arthroscopic pictures showed that plaintiff had near full thickness chondral loss of the central patella and the medial compartment. *Id*. at 316, 323, 366. As discussed *supra*, the ALJ's discussion of Dr. Solhpour's physical therapy recommendation was incomplete. On February 10, 2011, Dr. Solhpour explained to plaintiff that although she needed a total knee replacement, he preferred to maximize conservative measures to treat her right knee. *Id.* at 366-67. Despite the ALJ's suggestion otherwise, Dr. Solhpour clearly opined that plaintiff needed knee replacement surgery, but felt that surgery was not in plaintiff's best interest due to: (1) plaintiff's obesity; (2) plaintiff's age; and (3) the fact that the left knee surgery only provided moderate relief. *Id.* Thus, the objective evidence supported plaintiff's claim of pain in her right knee and Dr. Solhpour's conservative treatment recommendation was not indicative of the severity of plaintiff's condition.

### 3. Daily Activities

The ALJ also cited plaintiff's daily activities as a reason to discount her credibility. *Id*. at 16; *see Morgan*, 169 F.3d at 600 (a plaintiff's ability "to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit her). Specifically, the ALJ noted that plaintiff was able to take care of

her husband and son, tend to her personal care, cook, shop, do laundry, drive a car, read, watch television, take photographs, and e-mail friends. AR at 16. The ALJ's reason was not supported by substantial evidence.

"[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if a claimant is "able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit" her. *Id.* (emphasis in original). Here, plaintiff's ability to take care of her husband and son, drive, cook, do laundry, read, watch television, take photographs, and e-mail friends did not mean that she had the physical ability to work the entire work day. Moreover, plaintiff has expressed a limited ability to do most of those activities. Although plaintiff stated that she took care of her husband and son, she also stated that her husband helped a lot with taking care of her son and meals. AR at 147-48. Plaintiff could only do light laundry sometimes, cooked only about three times a week for twenty minutes at a time, and did not drive very often. *Id.* at 148-49. Plaintiff's limited activity hardly qualifies as a clear and convincing reason to find her less credible.

### 4. **Medication**

The ALJ's final reason for discounting plaintiff's credibility was that her medication history was inconsistent with the alleged severity of her pain. *Id.* at 16. Specifically, the ALJ found that plaintiff had "never been maintained on regular prescription of strong analgesics such as morphine, methadone, Fentanyl or Oxycontin." *Id.* As defendant recognizes, the ALJ's analysis is incorrect. *See*

1  D. Mem. at 9. At the hearing, plaintiff testified that she was taking Norco. *Id.* at
2  71. Her testimony is supported by her treatment records. *See, e.g., id.* at 427, 430.
3  In addition, plaintiff's treatment record reflects that she was also prescribed
4  Lortab. *See, e.g., id.* at 436, 438. Both medications are a combination of
5  acetaminophen and hydrocodone. As such, plaintiff's medication history was not
6  a clear and convincing reason.
7      In short, the ALJ offered four reasons for finding plaintiff less credible, only
8  one of which may be considered clear and convincing. Because this case is being
9  remanded, the ALJ should clarify with plaintiff's treating physician as to whether
10 he prescribed the use of a wheelchair as she claimed.

## V.
## **REMAND IS APPROPRIATE**

13     The decision whether to remand for further proceedings or reverse and
14 award benefits is within the discretion of the district court. *McAllister v. Sullivan*,
15 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by
16 further proceedings, or where the record has been fully developed, it is appropriate
17 to exercise this discretion to direct an immediate award of benefits. *See Benecke*
18 *v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d
19 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings
20 turns upon their likely utility). But where there are outstanding issues that must be
21 resolved before a determination can be made, and it is not clear from the record
22 that the ALJ would be required to find a plaintiff disabled if all the evidence were
23 properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96;
24 *Harman*, 211 F.3d at 1179-80.
25     Here, as set out above, remand is required because the ALJ erred at step two
26 and consequently must reconsider his RFC determination. On remand, the ALJ
27 shall: (1) reexamine the medical evidence; (2) obtain additional documentation to

ensure that the record is fully developed, including any new medical notes or opinions; and (3) retain a consultative examiner if necessary. The ALJ shall then redetermine plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is or was capable of performing and for what period of time.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: April 28, 2014

SHERI PYM
United States Magistrate Judge